UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KAREN AMY ANDREWS,<br><br>          Petitioner,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security<br>Administration,<br><br>          Respondent. | Case No. 1:14-cv-00506-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

Currently pending before the Court for its consideration is Karen Andrews's Petition for Review of the Respondent's denial of social security benefits, filed November 25, 2014. (Dkt. 1.) The Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and the administrative record (AR), and for the reasons that follow, will remand to the Commissioner.

**PROCEDURAL AND FACTUAL HISTORY**

Petitioner filed an application for Disability Insurance Benefits and Supplemental Security Income on January 29, 2012, claiming disability beginning January 23, 2012, due to depression, anxiety, and bipolar disorder. Her application was denied initially and on

**MEMORANDUM DECISION AND ORDER - 1**

reconsideration, and a hearing was held on February 14, 2013, before Administrative Law Judge (ALJ) Cecilia LaCara. After hearing testimony from Petitioner and vocational expert Daniel Labrosse, ALJ LaCara issued a decision finding Petitioner not disabled on April 5, 2013. Petitioner timely requested review by the Appeals Council, which denied her request for review on September 24, 2014.

Petitioner appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing, Petitioner was 43 years of age. Petitioner completed two years of a college education to obtain her paralegal certificate. Petitioner's prior work experience includes work as a paralegal.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. Petitioner bears the burden of proof at steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953 (9th Cir. 2001). At step one, it must be determined whether the claimant is engaged in substantial gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since her alleged onset date of January 23, 2012. At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found Petitioner's depression, anxiety, and bipolar disorder severe within the meaning of the Regulations.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Petitioner's impairments did not meet or equal the criteria for the listed impairments, specifically considering Listing 12.04 (affective disorders) and 12.06 (anxiety-related disorders). If a claimant's impairments do not meet or equal a listing, the Commissioner

**MEMORANDUM DECISION AND ORDER - 2**

must assess the claimant's residual functional capacity (RFC) and determine, at step four, whether the claimant has demonstrated an inability to perform past relevant work.

The ALJ found Petitioner was not able to perform her past relevant work as a paralegal. If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate, at step five, that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience.

The ALJ found Petitioner retained the RFC to perform a full range of work at all exertional levels, but with nonexertional limitations to performing simple instructions defined as one to three steps that are routine and repetitive, in a low stress job defined as having only occasional decision making required and only occasional changes to the work setting. Based upon the ALJ's RFC analysis, and the hypothetical posed to the Vocational Expert, the ALJ concluded Petitioner could perform the requirements of representative occupations such as rental storage clerk, airline security representative, and floor attendant for bingo.  Consequently, the ALJ found petitioner not disabled within the meaning of the regulations.

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if her physical or mental impairments are of such severity that she not only cannot do her previous work but is unable, considering her age, education, and work

**MEMORANDUM DECISION AND ORDER - 3**

experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

When reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard a claimant's self-serving

**MEMORANDUM DECISION AND ORDER - 4**

statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## DISCUSSION

Petitioner contends the ALJ erred at steps four and five, arguing the ALJ's credibility determination was not supported by substantial evidence; she committed error by relying upon the opinion of a non-examining medical source instead of that of the consultative examiner and treating practitioner; and she committed error because she relied upon vocational expert testimony that was the result of an incomplete hypothetical. Respondent argues the ALJ did not commit error, and that the Commissioner's decision should be affirmed.

## 1.     Credibility

Petitioner argues the ALJ's adverse credibility finding is not supported by substantial evidence in the record. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's findings must be supported by specific, cogent reasons. *Reddick*, 157 F.3d at 722. If a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). *See also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (holding that an ALJ may not discredit a claimant's subjective testimony on the basis that there is no objective medical evidence that supports the testimony). Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting pain testimony. *Burch*, 400 F.3d at

**MEMORANDUM DECISION AND ORDER - 5**

680. General findings are insufficient; the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Reddick*, 157 F.3d at 722.

The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999). If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002). When the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

When evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Also, the ALJ may consider the location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; the amount and side effects of medications; and treatment measures taken by the claimant to alleviate those symptoms. *See* Soc. Sec. Ruling 96-7p.

A failure to follow prescribed treatment may be used as sufficient evidence to support a conclusion that a claimant is not credible in describing symptoms about pain, and form the basis for finding the complaint unjustified or exaggerated. *Orn v. Astrue*, 495 F.3d 625, 637-638 (9th Cir. 2007).

Here, the ALJ determined Petitioner's mental impairments to be severe, and was therefore required to provide clear and convincing reasons in support of her adverse credibility

**MEMORANDUM DECISION AND ORDER - 6**

finding. The ALJ rejected Petitioner's symptom testimony on two grounds: (1) based upon the treating nurse practitioner's (Lindenfelser's) notes that Petitioner's moods were managed by medication and Petitioner did not take medication as prescribed; and (2) Petitioner engaged in daily activities including household chores, self-care, caring for two dogs, maintaining relationships with family and her husband, and watching television.

The ALJ manufactured a conflict in Nurse Practitioner Lindenfelser's notes by mischaracterizing Petitioner's symptom testimony and Lindenfelser's recount of Petitioner's significant mental health history. For example, the ALJ indicated Lindenfelser stated that, with treatment, Petitioner's symptoms were managed successfully with therapy and medication, and that Petitioner's condition had gradually improved with treatment. (AR 24.) However, Lindenfelser's statement to that effect was taken out of context. Lindenfelser stated in December of 2010, just after Petitioner was fired from her job in 2009 and left her later job, that prior to December of 2010, Petitioner's mood instability had been managed with medication and she had been able to work. But, all of Lindenfelser's notes and letters authored after 2010 indicated Petitioner's condition not only waxed and waned, but worsened. Lindenfelser's notes do not indicate a gradual improvement, but rather an increase in phobias in July of 2011, resulting in Petitioner's hospitalization in September of 2011.

It is error for an ALJ to select an isolated instance of improvement and treat it as a basis for concluding a claimant is capable of working. *Garrison v. Colvin*, 759 F.3d 995, 1018 (9th Cir. 2014). Here, the substantial evidence in the record indicated Petitioner was fired in September of 2009; she suffered several manic episodes and an increase in anxiety during 2010 and 2011; and Petitioner's mood destabilized dramatically after December of 2010. The ALJ improperly focused upon a period of time prior to December of 2010 when medication and

**MEMORANDUM DECISION AND ORDER - 7**

therapy were assisting Petitioner and enabling her to work, and relied upon that period to discredit Petitioner.

Next, the ALJ indicated Lindenfelser's treatment records indicated Petitioner took too much or did not take medication at all during times of stress, but when she took her medication as prescribed Petitioner was able to cope. (AR 24.) This conclusion is error. Petitioner overdosed on her medications on November 6, 2010, caused by a panic attack and increased anxiety, and was hospitalized again in September of 2011, because she expressed thoughts of overdosing on her medications. (AR 230.) Throughout 2011, Petitioner was prescribed and was taking several mediations, but continued to have difficulties resulting in her hospitalization for suicidal thoughts. In January of 2012, Lindenfelser expressed that, "without mood stability, [Petitioner] simply cannot function at work," and described that despite her "best efforts," Petitioner continued to suffer from an unstable mood. (AR 452.)

There is little support in the record that Petitioner could adequately cope with medication. Instead, the record shows that Petitioner's decisions to take too much medication were at least in part a result of her underlying bipolar disorder and her other psychiatric issues, and that despite aggressive drug therapy, Petitioner's moods were not stable. *Garrison*, 759 F.3d at 1018 n. 23, 24 ("the very nature of bipolar disorder is that people with the disease experience fluctuations in their symptoms, so any single notation that a patient is feeling better or had a 'good day' does not imply that the condition has been treated;" Claimant's decisions to "go off her meds were at least in part a result of her underlying bipolar disorder.").

The ALJ concluded also that once Petitioner left her high stress job as a paralegal, "prior records suggest that the claimant would not have difficulty performing work tasks in a low stress job, as defined above." However, the ALJ neither cited to any portion of the record indicating

**MEMORANDUM DECISION AND ORDER - 8**

when Petitioner performed well in a low stress job, or supported his conclusion with citation to any of the medical evidence of record. This appears to be conjecture on the part of the ALJ. "[I]mproved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace," especially when Nurse Practitioner Lindenfelser and Dr. Gonzales were of the opinion Petitioner was not prepared to return to work. *Garrison*, 759 F.3d at 1017-18.

Finally, the ALJ noted Petitioner engaged in activities inconsistent with a finding of disability. The ALJ specifically cited Petitioner's ability to perform some household chores, care for her two dogs, watch television, and maintain family relationships. Petitioner argues that her ability to perform household chores and care for her dogs were mischaracterized by the ALJ, because her pet care is limited to feeding the dogs, she limited her television watching to the nightly news, and her social interactions were limited to talking on the phone with her mother and daughter. Petitioner cites also her phobia of driving caused by her anxiety disorders.

The mere fact Petitioner has carried on certain daily activities does not detract from her credibility as to her overall disability. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). First, as Petitioner described them, her activities do not contradict her other testimony. She recounted to Dr. Gonzales that she has a phobia of driving and bathing, and she arrived to the appointment in a taxi. Similarly, her husband drove her to the hearing before the ALJ. (AR 46.) She described that, in order to drive, she has to map out a route where she only makes right hand turns. (AR 47.) She leaves the house only to go to doctor's appointments. (AR 46 – 47.) At the hearing, she reported that her medications make her feel physically ill, and that she was fired from her previous three jobs for excessive absences. (AR 39, 48.)

Second, her activities do not meet the threshold for transferable work skills. *Orn*, 495

**MEMORANDUM DECISION AND ORDER - 9**

F.3d at 639. An adverse credibility finding based upon activities may be proper "if a claimant engages in numerous daily activities involving skills that could be transferred to the workplace." *Orn*, 495 F.3d at 639 (quoting *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)).  The ALJ must make specific findings relating to the daily activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination. *Id.*

Here, the ALJ noted Petitioner could do household chores, including laundry, dusting, and vacuuming, as well as self-care activities, feed her two dogs, watch television, and maintain a relationship with her husband and her mother. Based upon the ALJ's characterization of Petitioner's activities, she concluded they were "not incompatible" with the limitations described, which the ALJ characterized as light work limited to simple instructions in a low stress job. (AR 23-24.) In other words, the ALJ appears to have concluded that the demanding nature of Petitioner's job as a paralegal, once removed, would permit her to work. However, the ALJ ignored Petitioner's testimony about the effect of her medications, her phobia and anxiety about driving (which would limit her options in getting to work in a timely fashion), her anxiety about bathing, her excessive absences from her previous jobs due to her bipolar symptoms, her testimony that she never left the house other than to visit her doctors, and the fact she did not cook, shop, vacuum, dust, take the garbage out, or do anything other than listen to the radio during the day. (AR 54-56, 46.)

The ALJ appears to have made an improper judgment, unsupported by the evidence in the record, that a low-stress job would eliminate Petitioner's mental health symptoms. Yet, Petitioner's daily activities, as she described them, were consistent with her statements about the impairments caused by her Bipolar disorder, anxiety, and depression. The ability to talk on the phone, and feed oneself and one's dogs, while otherwise being essentially housebound, is

**MEMORANDUM DECISION AND ORDER - 10**

consistent with an inability to function in a workplace environment. Accordingly, the supposed inconsistencies between Petitioner's daily activities and her testimony do not satisfy the requirement of a clear, convincing, and specific reason to discredit Petitioner's testimony regarding the severity of her mental health impairments.

## 2.    Rejection of Treating and Examining Source Opinions

### A.    *Medical History*

On July 25, 2012, Psychologist Daniel Gonzales examined petitioner. In his consultative evaluation, Dr. Gonzales reviewed Petitioner's medical records received from Providence Alaska Medical Center and outpatient treatment records from Judith Lindenfelser, a psychiatric nurse practitioner. He summarized Petitioner's account of her history of symptoms and treatment. Dr. Gonzales diagnosed Petitioner with Bipolar I disorder, mixed type, a GAF score of 40, and noted she had employment problems. Dr. Gonzales found Petitioner to be credible, noting that she put forth "a forthright and authentic self-presentation." (AR 430.) According to Dr. Gonzales, Petitioner had marked impairment in all areas, which include her ability to understand, retain, and follow instructions, as well as sustain concentration to perform simple tasks; to sustain concentration to task persistence and pace; to respond appropriately to coworkers, supervisors, and the public; and to respond appropriately to changes in the work setting. Dr. Gonzales noted Petitioner's phobia of driving, and that she had arrived in a taxi to the appointment. Nonetheless, her mental status examination revealed Petitioner was alert, could identify two of the past presidents, name five large cities, recall 2/5 words after a five minute delay, and could identify current events. Petitioner reported also that at that time, she rated her anxiety at a level 2/10, and her depression at level 4/10. (AR 430.)

Nurse Practitioner Lindenfelser treated Petitioner from April of 2009 through December

**MEMORANDUM DECISION AND ORDER - 11**

of 2012. Her clinic notes are handwritten, and difficult to read. However, she prepared a typewritten chronological summary of her notes and a series of letters setting forth her opinion regarding Petitioner's ability to work. Her diagnostic impression was that Petitioner was suffering from anxiety disorders and bipolar disorder, with specific phobias of walking up and down stairs and driving. Her most recent episode was hypomanic. (AR 329.)

Lindenfelser documented Petitioner's mood instability between April 25, 2009, through August 13, 2011, in her handwritten notes and typewritten summary. (AR 374-76.) In September of 2009, Petitioner was fired from her employment. In April of 2010, Lindenfelser noted Petitioner called, and was manic. Lindenfelser documented a series of ups and downs, including several hypomanic episodes during 2010, and an overdose of medication on November 6, 2010, caused by a panic attack and increased anxiety, resulting in Petitioner's admission to the emergency room. In July of 2011, Lindenfelser noted the return of Petitioner's phobias when she became afraid to shower, and at that time, Lindenfelser changed Petitioner's medication regimen to Lamictal. By August of 2011, Petitioner was feeling anxious and depressed. (AR 374-75.)

Lindenfelser authored a letter dated December 23, 2010, indicating she had been treating Petitioner for Bipolar disorder since April 29, 2009, and had engaged in medication management and supportive psychotherapy. Lindenfelser's letter indicates Petitioner's mood instability had been managed with medication, and Petitioner had been able to work throughout that period. However, as of December of 2010, Lindenfelser indicated Petitioner's work environment deteriorated, and contributed to the destabilization of Petitioner's Bipolar disorder.  (AR 331.)

A letter from Lindenfelser dated January 27, 2012, indicated Petitioner had been compliant with her medication, which included four changes in mood stabilizers over the course of 2011; that Petitioner had been hospitalized for the worsening of her condition; and that

**MEMORANDUM DECISION AND ORDER - 12**

Petitioner was fired from her job for missing too many days at work. In Lindenfelser's opinion, Petitioner could not work. On May 16, 2012, Lindenfelser stated Petitioner's condition had worsened, and that she did not anticipate Petitioner would be able to work in the future.

The last letter in the file, dated September 6, 2012, indicated Lindenfelser was of the opinion that the stressful work environment at Petitioner's previous job significantly contributed to the destabilization of her mood disorder, from which Petitioner had not yet recovered. (AR 475.) Finally, on December 10, 2012, Lindenfelser drafted a summary of Petitioner's treatment history, noting that Petitioner's disease waxed and waned between episodes of mania, hypomania, and euthymia with an overlay of anxiety, and in the fall of 2011, Petitioner began to experience depression resulting in hospitalization in September of 2011. (AR 476.) Lindenfelser opined that, due to the worsening of Petitioner's bipolar disorder, she was unable to work.

Psychologist Mack Stephenson, a non-treating, non-examining physician, completed a review of Petitioner's medical records. In his opinion, Petitioner suffered only mild limitations in activities of daily living and social functioning, moderate limitations in maintaining concentration, persistence, or pace, and moderate limitations in understanding and remembering detailed instructions. According to Dr. Stephenson, Petitioner was managing her mental health conditions with medication, and therefore she could perform less complex jobs. (AR 68-79.) The ALJ gave Dr. Stephenson's opinion great weight, essentially adopting its conclusions and rationale. (AR 24.)

**B.**    *Analysis*

The Court of Appeals for the Ninth Circuit cases distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat

**MEMORANDUM DECISION AND ORDER - 13**

the claimant (nonexamining physicians). *Lester v. Chatter*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight is accorded to the opinion of a treating source than to nontreating physicians. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987). If the treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991). If the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject the treating physician's opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983). In turn, an examining physician's opinion is entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984).

Under Section 423 of the Social Security Act, the Commissioner of Social Security is required to consider all of the evidence available in a claimant's case record, including evidence from medical sources. 42 U.S.C. § 423(d)(5)(B); *see also* 20 CFR § 404.1527(d) ("Regardless of its source, we will evaluate every medical opinion we receive."). The term medical sources refers to both acceptable medical sources and other health care providers who are not acceptable medical sources. See 20 CFR § 416.902. The regulations provide that "[i]n addition to evidence from the acceptable medical sources" evidence from other sources should be used to "show the severity of [a claimant's] impairment(s) and how it affects [the claimant's] ability to work." 20 CFR § 404.1513(d). This includes evidence from nurse practitioners such as Lindenfelser. 20 CFR § 404.1513(d)(1).

Social Security Ruling ("SSR") 06–03p provides that non-acceptable medical sources should be evaluated under the same factors as all other medical opinions set forth in 20 CFR

**MEMORANDUM DECISION AND ORDER - 14**

404.1527(d) and 416.927(d).2 See SSR 06–03p ("These factors represent basic principles that apply to the consideration of all opinions from medical sources who are not 'acceptable medical sources' as well as from 'other sources,' such as teachers and school counselors, who have seen the individual in their professional capacity.") These factors include: (1) how long the source has known and how frequently the source has seen the individual; (2) how consistent the opinion is with other evidence; (3) the degree to which the source presents relevant evidence to support an opinion; (4) how well the source explains the opinion; (5) whether the source has a specialty or area of expertise related to the individual's impairments; and (6) any other factors that tend to support or refute the opinion. SSR 06–03p.

Relevant here, SSR 06–03p provides the following: "The fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source.' " SSR 06–03p. "However, depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source.' " *Id*. The ruling goes so far as to say that, in certain circumstances, it may be appropriate to give the opinion of a non-acceptable medical source more weight than a treating source. *Id*. ("For example, it may be appropriate to give more weight to the opinion of a medical source who is not an 'acceptable medical source' if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion.")

Nonetheless, an ALJ is not required to accept an opinion of a treating physician if it is conclusory and not supported by clinical findings. *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Additionally, an ALJ is not bound to a physician's opinion of a

**MEMORANDUM DECISION AND ORDER - 15**

petitioner's physical condition or the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the record as a whole does not support the physician's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin*., 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id.*; *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin*., 169 F.3d 595 (9th Cir. 1999). An ALJ also may reject a treating physician's opinion if it is based "to a large extent" on a claimant's self -reports that have been property discounted as not credible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

Here, the ALJ rejected the opinions of nurse practitioner Lindenfelser and Dr. Gonzales. With regard to Lindenfelser, the ALJ stated her opinions were "without substantial support from other evidence in the record, as they are not supported by objective findings in the record, which renders them less persuasive." (AR 25-26.) The ALJ stated Lindenfelser's letters were written to support Petitioner's disability claim,[1] and did not refer to objective examination findings. As for Dr. Gonzales, the ALJ rejected his opinion that Petitioner suffered from marked limitations, considering Dr. Gonzales's impression to be an "overestimate" based upon a subjectively presented snapshot of Petitioner's functioning, and he relied too heavily upon the subjective report of symptoms and limitations provided by Petitioner. The ALJ gave weight only to Petitioner's mental health status examination, wherein Petitioner appeared to do well because she could identify news stories, name the last two presidents, and perform mathematical calculations

---

[1] Petitioner had filed for worker's compensation benefits as a result of leaving her employment.

MEMORANDUM DECISION AND ORDER - 16

without error. (AR 25.)

Instead, the ALJ determined Dr. Stephenson's opinion was entitled to great weight, because he was an expert in Social Security Disability programs, and his opinion was "well supported by the medical evidence." (AR 25.) The ALJ noted Dr. Stephenson "reviewed the medical evidence objectively, and relied on findings from the consultative examination, treatment records, and the claimant's own reported activities in formulating his assessment." (AR 25.)

With regard to the ALJ's evaluation of Lindenfelser's opinion[2] evidence, the ALJ failed to recognize that her opinions were based upon significant experience over the course of several years treating Petitioner and therefore entitled to weight that an otherwise unsupported and unexplained opinion would not merit. Further, Dr. Gonzales's opinion upon hearing from Petitioner and reviewing Lindenfelser's records was essentially in agreement with Lindenfelser's assessment. However, the ALJ manufactured a conflict between Dr. Gonzales's opinion and Lindenfelser's opinion, by relying solely upon Dr. Gonzales's mental status examination findings (wherein Petitioner could name the past two presidents and perform similar cognitive tests) and concluding that Dr. Gonzales's opinion conflicted with Lindenfelser's opinion because Dr. Gonzales's testing revealed only moderate limitations in cognitive functioning. However, Dr. Gonzales was of the opinion that Petitioner had marked limitations.

And finally, the ALJ erred by using nothing more than boilerplate language when stating Lindenfelser's findings were "without substantial support from other evidence of record, as they are not supported by objective findings in the record…." The ALJ failed to explain what the

---

[2] The ALJ appropriately recognized Lindenfelser as an "other source" who could provide evidence about the severity of Petitioner's impairments.

**MEMORANDUM DECISION AND ORDER - 17**

other evidence of record was that undermined Lindenfelser's findings, or what sort of "objective findings" existed to render her opinions less persuasive. The ALJ concluded Lindenfelser's letters lacked reference to "objective examination findings" to support the opinions she expressed therein. But an ALJ may not reject a diagnosis of mental illness solely for lack of objective findings. *See Regennitter v. Comm'r* , 166 F.3d 1294, 1297 (9th Cir. 1999) ("conclusory reasons will not justify an ALJ's rejection of a medical opinion: To say that medical opinions are not supported by sufficient objective findings…does not achieve the level of specificity our prior cases have required….") (quoting *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988)). Accordingly, the ALJ erred in her conclusion that Lindenfelser's opinions deserved little weight.

Turning to the consultative examiner, Dr. Gonzales, the ALJ committed similar errors. First, the ALJ determined Dr. Gonzales's opinion was entitled to little weight because it relied heavily on the subjective report of symptoms provided by Petitioner, rather than his "examination findings," and therefore overestimated the severity of Petitioner's limitations. However, the ALJ failed to note Dr. Gonzales specifically found Petitioner credible, and noted her phobias of driving (she had arrived in a taxi) and bathing. There is no indication in Dr. Gonzales's report that indicted he believed Petitioner was exaggerating or lying in her self-reported mental health symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1013 n.16 (9th Cir. 2014) (citing *Tommasetti v. Astrue*, 533 F.3d 1035 1041 (9th Cir. 2008)).  Further, Dr. Gonzales examined Petitioner on a relatively "good" day, as Petitioner rated her anxiety as a 2/10, and her depression a level 4/10.

And second, the ALJ manufactured a conflict by stating Dr. Gonzales's "objective examination" was not consistent with Dr. Gonzales's opinion that Petitioner suffered from

**MEMORANDUM DECISION AND ORDER - 18**

marked limitations. In other words, because Petitioner could name five large cities and do basic

math, Dr. Gonzales could not have found her to have marked limitations. However, one's

cognitive ability to answer questions about the president and perform basic math calculations is

not at odds with an assessment, as Dr. Gonzales made, that Petitioner could not respond

appropriately to changes in the work setting, or to coworkers, supervisors and the public, all of

which relate to Petitioner's ability to relate to others. Finally, Dr. Gonzales, a specialist and an

examining physician, bolstered his conclusions with diagnoses including bipolar disorder and a

GAF score of 40. Accordingly, the ALJ's belief that Dr. Gonzales's report weighed against a

finding of disability was error.

**3.      Hypothetical Question Posed to Vocational Expert**

Once a claimant has established that he or she suffers from a severe impairment that

prevents the claimant from doing any work he or she has done in the past, the claimant has made

a prima facie showing of disability. At this point—step five—the burden shifts to the

Commissioner to show that the claimant can perform some other work that exists in "significant

numbers" in the national economy, taking into consideration the claimant's residual functional

capacity, age, education, and work experience. 20 CFR § 404.1560(b)(3). The ALJ may call

upon a vocational expert to testify as to the jobs the claimant is able to do given her residual

functional capacity, and the availability of such jobs in the national economy. *Tackett v. Apfel*,

180 F.3d 1094, 1011 (9th Cir. 1999). The ALJ must pose a hypothetical question to the

vocational expert that sets forth all of the claimant's impairments for the vocational expert's

consideration. *Id.* the depiction of the claimant's disability must be accurate, detailed, and

supported by the medical record. *Id.* The ALJ need not consider or include alleged impairments

that have no support in the record. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1163–64 (9th Cir.

**MEMORANDUM DECISION AND ORDER - 19**

2000).

Petitioner challenges the ALJ's step five determination of her ability to perform other work. She argues the hypothetical posed to the vocational expert was inadequate, because it excluded some of her functional limitations. Petitioner's challenge encompasses the errors discussed above.

The ALJ's failure to adequately support her rationale for rejecting the conclusions of nurse practitioner Lindenfelser and examining physician Gonzales, along with the errors in assessing Petitioner's credibility, calls into question the ALJ's determination of Petitioner's limitation and RFC. Because those determinations were flawed, the hypothetical posed to the vocational expert was legally inadequate. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001). Such a failure is not harmless because, if the ignored testimony is credited, a proper hypothetical would have included limitations which, the record suggests, would have been determinative of the vocational expert's recommendation to the ALJ. Accordingly, the ALJ's step five determination is not supported by substantial evidence. *Id.* at 1163 ("An ALJ must propose a hypothetical that is based on medical assumptions supported by substantial evidence in the record that reflects each of the claimant's limitations.").

**MEMORANDUM DECISION AND ORDER - 20**

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)      Plaintiff's Petition for Review (Dkt. 1) is **GRANTED**.

2)      This action shall be **REMANDED** to the Commissioner for further

proceedings consistent with this opinion.

3)      This Remand shall be considered a "sentence four remand,"

consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852,

854 (9th Cir. 2002).

Dated: **MARCH 02, 2016**

Honorable Candy W. Dale
United States Magistrate Judge